UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTINA ADAMCZYK,

                    Plaintiff,

v.

SCHOOL DISTRICT OF THE CITY
OF HAMTRAMCK PUBLIC
SCHOOLS, et al.,

                    Defendants.

_____/

Case No. 2:20-cv-12450

HONORABLE STEPHEN J. MURPHY, III

## OMNIBUS OPINION AND ORDER

Plaintiff Christina Adamczyk sued Defendants School District of the City of Hamtramck Public Schools (the District), Jaleelah Hassan Ahmed, and Michelle Imbrunone. ECF 1. Plaintiff sued under the First and Fourteenth Amendments, the Family and Medical Leave Act (FMLA), the Michigan Whistleblowers' Protection Act, the Michigan Bullard-Plawecki Employee Right to Know Act, and for breach of contract. *Id.* at 28–41.

After the close of discovery, the parties cross-moved for summary judgment. ECF 38 (Defendants' summary judgment motion); ECF 39 (Plaintiff's partial summary judgment motion). The parties briefed the motions. ECF 41; 42; 44; 46. Plaintiff then moved for sanctions against all Defendants based on spoliation of evidence. ECF 47. Defendants filed an untimely response to the sanctions motion, ECF 48, and Plaintiff replied, ECF 49. For the following reasons, the Court will grant

in part and deny in part the summary judgment motion by Defendants and grant Plaintiff's motions.[1]

## BACKGROUND

In August 2019 the Hamtramck Public School District hired Plaintiff as a middle school assistant principal. ECF 41-1, PgID 985. At the time Plaintiff was hired, Defendant Ahmed was the superintendent of the District, and Defendant Imbrunone was the director of human resources. ECF 1, PgID 4–5. In March 2020, as the COVID-19 pandemic quickly spread across the country, "school districts across Michigan were required to shut down and to engage in efforts to comply with various State and local directives to hinder the [p]andemic's spread and to mitigate its effects." *Id.* at 5.

Concerned with safety issues surrounding the pandemic, Plaintiff became vocal about the District's compliance with various executive orders and other COVID-19 precautionary measures. In particular, Plaintiff challenged the District for allegedly failing to provide personal protective equipment, failing to take temperatures, and failing to require six-feet social distancing between individuals. *See* ECF 1, PgID 10–14, 18; ECF 38-2, PgID 639–40, 642, 651–52; ECF 38-3, PgID 731; ECF 38-5, PgID 782. Yet no executive order mandated the District to require or provide for those measures. ECF 38-2, PgID 639–40, 642, 651–52; *see* ECF 38-3, PgID 729 ("[W]e were in compliance of every executive order that came that was in effect.");

---

[1] Based on the parties' briefing, the Court will resolve the motions on the briefs without a hearing. *See* Fed. R. Civ. P. 78(b); E.D. Mich. L.R. 7.1(f)(2).

2

ECF 38-5, PgID 783. Plaintiff's repeated vocal doubts about the compliance efforts by the District, coupled with the uncertainty surrounding COVID-19 and the government measures that the District needed to follow, ECF 38-3, PgID 728–29, caused Plaintiff's co-workers to feel that her speech "created a hysteria" that stirred up "confusion [and] made other administrators uncomfortable." ECF 83-3, PgID 725. And because of the insistent complaints by Plaintiff, Defendant Ahmed believed that "[t]he environment [became] very toxic." *Id.*

In mid-2020 a bond proposal relating to funding in the District was slated for a vote. ECF 1, PgID 6–7, 21. Plaintiff and her husband opposed the proposal, and Plaintiff was insistent about her opposition. *Id.* at 7, 21. Defendant Ahmed supported the bond proposal and helped organize a task force to do "what [they] could to get the word out, get the message out, [and] answer any questions that the community members or anyone had." ECF 38-3, PgID 722. The bond proposal was ultimately rejected on August 4, 2020. ECF 1, PgID 21–22.

Between April 2020 and June 2020, Plaintiff filed several complaints with the Michigan Occupational Safety and Health Administration (MIOSHA) about the District's supposed failure to follow COVID-19 safety directives. *Id.* at 9–12, 17–18; *see* ECF 38-3, PgID 721. Based on the complaints made to MIOSHA, Defendant Ahmed concluded that Plaintiff had either failed to review the COVID-19 communications circulated to her by the District or that she had "misunderstood their content as they appl[ied] to [the] public school employer and employees." ECF 38-3, PgID 724. And Defendant Ahmed became concerned by Plaintiff's conduct after she

filed the complaints because "she carried on and just continued to create an environment of toxicity" rather than simply "filing a complaint" and then "removing herself" so that "the district could work with MIOSHA." *Id.* (alterations omitted).

In May 2020 Defendant Imbourne sent to Plaintiff a written warning that stated Plaintiff had failed "to read or to comprehend previous COVID-19 communications." ECF 1, PgID 15–16. The letter also stated that Plaintiff was "giving direction on COVID-19 protocols based on gross misunderstandings and misrepresentations" and that she was "causing doubt and . . . needless disruption, anxiety, distraction[,] and delay of immediate and day-to[-day] operations." *Id.* at 16 (quotation marks removed).

Sometime in late May or early June 2020, Plaintiff took FMLA leave. ECF 1, PgID 18. On June 15, 2020 Defendant Imbrunone sent to Plaintiff a second written warning that threatened "disciplinary consequences up to and including termination." ECF 1, PgID 18; *see* ECF 38-2, PgID 657 ("[Y]ou've been disseminating incorrect information. And if you do that in your capacity as a member of the administration or fail to implement directives, which are your responsibility to implement, or fail to comply with the directives given to you, there will be additional disciplinary consequences up to and including termination."). On August 7, 2020, while Plaintiff was on FMLA leave, Defendant Imbrunone sent to Plaintiff a letter that notified "her that she had been 'reassigned to Hamtramck High School as a Social Studies Teacher[,] . . . effective on August 10, 2020." ECF 1, PgID 22; *see* ECF 39-7, PgID 929.

4

## LEGAL STANDARD

The Court must grant a summary judgment motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party must point to specific portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party may not simply rest on the pleadings but must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (quoting Fed. R. Civ. P. 56(e)).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a summary judgment motion, the Court must view the facts and draw all reasonable inferences "in the light most favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citations omitted).

## DISCUSSION

Defendants moved for summary judgment on all claims. ECF 38. Plaintiff moved for summary judgment on only the procedural due process and contract claims.

ECF 39. The Court will resolve the motions by analyzing each claim in turn. After, the Court will explain why sanctions based on spoliation of evidence are warranted.

I.   Defendants' Motion for Summary Judgment

Plaintiff alleged five theories of liability against Defendants: violation of civil rights under 42 U.S.C. § 1983; violation of the FMLA; and liability based on three State-law claims. The Court will address each theory in turn.

A.   *Civil Rights Claims Under 42 U.S.C. § 1983*

Plaintiff claimed that Defendants purposefully discriminated and retaliated[2] against her after she exercised her First Amendment rights to association, speech, and petition. ECF 1, PgID 29–30. She also claimed that Defendants violated her due process rights under the Fourteenth Amendment because she was terminated without notice and a hearing. *Id.* at 29. For the reasons below, summary judgment to Defendants is warranted as to the First Amendment claim but not the Fourteenth Amendment claim.

1.   *Violation of the First Amendment*

Section 1983 "prohibit[s] [S]tate employees from violating a person's constitutional rights," including those guaranteed by the First Amendment. *Green v. City of Southfield*, 925 F.3d 281, 284 (6th Cir. 2019). To establish a First Amendment retaliation claim, a public employee "must show that: (1) the plaintiff was engaged in constitutionally protected speech; (2) the plaintiff was subjected to an adverse action

---

[2] Based on the parties' briefing, Plaintiff's claim focuses solely on retaliation rather than discrimination. *See* ECF 38, PgID 603–08; ECF 42, PgID 1001–17; ECF 44, PgID 1197–1203.

6

or was deprived of some benefit; and (3) the protected speech was a 'substantial' or a 'motivating factor' in the adverse action." *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003) (quotation omitted). Speech is "constitutionally protected" if it "touch[es] on matters of public concern" and if the public employee's "interest in making such statements outweighs the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* (citing *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 568 (1968)). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Id.* at 893 (citing *Connick v. Myers*, 461 U.S. 138, 147–48 (1983)).

To start, Plaintiff's speech was constitutionally protected because it touched on matters of public concern. Plaintiff claimed that her speech related to three matters of public concern: (1) the possible wrongdoing of public officials; (2) public safety; and (3) the funding and spending decisions of the District. ECF 42, PgID 1004–05. Plaintiff is correct that speech related to COVID-19 safety and the school district's response to COVID-19 could be a matter of public concern. Indeed, "[w]hen an institution oversees some aspect of public safety, the correct operation of that institution is a matter of public concern." *Hoover v. Radabaugh*, 307 F.3d 460, 466 (6th Cir. 2002) (citation omitted). And "[e]xposing governmental inefficiency and misconduct is a matter of considerable significance." *Garcetti v. Ceballos*, 547 U.S. 410, 425 (2006). Plus, the subjects of Plaintiff's speech were not the sort that would have been considered matters of "purely private concern." *Snyder v. Phelps*, 562 U.S.

443, 454 (2011) (citation omitted). Instead, the "content, form, and context" of her speech plainly related to broad safety issues of interest to the local community. *Id.* at 453–54.

That said, the interest of Defendants to maintain a calm, hysteria-free environment outweighed Plaintiff's right to comment on a matter of public concern. *See Pickering*, 391 U.S. at 568. Defendants were not obligated to "tolerate action which [they] reasonably believed would disrupt the office, undermine [their] authority, and destroy close working relationships." *Connick*, 461 U.S. at 154. To be sure, the "[p]rolonged retention of a disruptive or otherwise unsatisfactory employee can adversely affect discipline and morale in the work place, foster disharmony, and ultimately impair the efficiency of an office or agency." *Arnett v. Kennedy*, 416 U.S. 134, 168 (1974) (Powell, J., concurring). And the testimony of Defendant Ahmed revealed that Plaintiff's conduct caused precisely those problems. *See* ECF 38-3, PgID 725 (explaining that Plaintiff's speech "created a hysteria" that stirred up "confusion [and] made other administrators uncomfortable").

Plaintiff's problematic behavior was compounded by the fact that her requests and concerns did not align with the mandates that the District was legally obligated to follow. For instance, Plaintiff repeatedly questioned the District for failing to provide personal protective equipment, failing to take temperatures, and failing to require six-feet social distancing between individuals. *See* ECF 1, PgID 10–14, 18; ECF 38-2, PgID 639–40, 642, 651; ECF 38-3, PgID 731; ECF 38-5, PgID 782. Yet Plaintiff conceded at her deposition that no executive order mandated the District to

8

require or provide for those measures. ECF 38-2, PgID 639–40, 642, 651–52; *see* ECF 38-3, PgID 729 ("[W]e were in compliance of every executive order that came that was in effect."); ECF 38-5, PgID 783. Beyond that, the District had to balance "the daily, possibly even hourly[,] changes to guidances and information that [it was] receiving." ECF 38-3, PgID 728. The fluidity of the COVID-19 protocols and the uncertainty surrounding the pandemic required flexibility from its employees, rather than "ongoing aggression," *id.*, to avoid "impair[ing] the efficiency of" the District's operations. *Arnett*, 416 U.S. at 168; *see also* ECF 38-5, PgID 782 ("I think creating hysteria and creating chaos and winding staff up, as opposed to . . . being an active and engaged listener and checking for understanding would have gone a long way."). Accordingly, because Plaintiff's interest was outweighed by the interests of Defendants, Plaintiff failed to establish that Defendants violated her First Amendment rights as a matter of law. *See Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 180 (6th Cir. 2008) ("[T]he *Pickering* balancing test is a matter of law for the court to decide.") (quotation omitted).

Next, Plaintiff's speech relating to the funding and spending of the District as it related to the bond "is a matter of legitimate public concern." *Pickering*, 391 U.S. at 571. But Plaintiff failed to show any correlation between her opinion about the bond election and the District's decision to terminate her from the administrative position. Based on the evidence, her termination rested on her conduct relating to the District's COVID-19 response and lacked a causal connection to the bond election. *See, e.g.*, ECF 38-3, PgID 724–26, 728, 730–31, 744–46; ECF 38-5, PgID 773, 782. In

fact, the only connection between the bond election and her termination was the close timing, which appears to be coincidental at best. *See* ECF 1, PgID 21–22 (bond proposal rejected on August 4, 2020 and Plaintiff's reassignment from administrator position on August 7, 2020). For those reasons, the First Amendment claim fails as to Plaintiff's speech that concerned the funding and spending of the District. Because there was no First Amendment violation, the Court will dismiss Plaintiff's § 1983 claim based on the First Amendment.

### 2.    *Violation of due process[3]*

Section 1983 "prohibit[s] [S]tate employees from violating a person's constitutional rights," including those guaranteed by the Due Process Clause of the Fourteenth Amendment. *Green*, 925 F.3d at 284. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the . . . Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "To establish a procedural due process violation, [p]laintiffs must show (1) that they have been deprived of a cognizable liberty [or property] interest, and (2) that such deprivation occurred without adequate procedural protections." *Schulkers v. Kammer*, 955 F.3d 520, 545 (6th Cir. 2020) (citations omitted). "A property interest can be created by a [S]tate statute, a formal contract, or a contract implied from the

---

[3] Plaintiff noted in her response brief that she "relies on and incorporates by reference her arguments that were made in the brief in support of the Plaintiff's Motion for Partial Summary Judgment." ECF 42, PgID 999. In the interest of judicial economy, therefore, the Court will address both motions for summary judgment in this section, ECF 38; 39.

circumstances." *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 565–66 (6th Cir. 2004) (collecting cases).

Plaintiff argued that she had a property interest in her continued employment as an administrator protected by the Due Process Clause. ECF 39, PgID 868. Accordingly, when Defendants terminated Plaintiff from her administrator position without "afford[ing] [her] any notice or opportunity to be heard," Defendants violated her right to procedural due process. *Id.* at 875. In response, Defendants argued that Plaintiff held no property interest in continued employment because she was a probationary employee who, under the employee contract, was not entitled to receive notice. ECF 38, PgID 603–04 n.3.

Based on the evidence before the Court, Plaintiff had a property interest in her continued employment as an administrator. The parties agreed that Plaintiff was a probationary administrator. ECF 41, PgID 976; ECF 46, PgID 1219. The parties also agreed that Plaintiff's employment was bound by a collective bargaining agreement, ECF 39-3, and that under the agreement, Plaintiff was considered an administrator in her "initial term." ECF 41, PgID 975; ECF 46, PgID 1219. Under the collective bargaining agreement, an administrator serving an "initial term" has a one-year contract with the school, and it "is subject to non-renewal" under Michigan Compiled Laws 380.1229. ECF 39-3, PgID 900. Section 380.1229(2) states:

> If written notice of nonrenewal of the contract of an [assistant superintendent, principal, assistant principal, guidance director, or other administrator who does not assume tenure in that position] is not given at least 60 days before the termination date of the contract, the contract is renewed for an additional 1-year period.

And under section 380.1229(3):

> A notification of nonrenewal of contract of an individual described in subsection (2) may be given only for a reason that is not arbitrary or capricious. The board shall not issue a notice of nonrenewal under this section unless the affected individual has been provided with not less than 30 days' advance notice that the board is considering the nonrenewal together with a written statement of the reasons the board is considering the nonrenewal. . . . After the issuance of the written statement, but before the nonrenewal statement is issued, the affected individual shall be given the opportunity to meet with not less than a majority of the board to discuss the reasons stated in the written statement. The meeting shall be open to the public or a closed session, as the affected individual elects under section 8 of the open meetings act, 1976 PA 267, MCL 15.268. If the board fails to provide for a meeting with the board, or if a court finds that the reason for nonrenewal is arbitrary or capricious, the affected individual's contract is renewed for an additional 1-year period.

It is undisputed that the collective bargaining agreement governed Plaintiff's employment. It is also undisputed that Plaintiff was terminated from her administrator position while she was in her initial term. Thus, under the collective bargaining agreement, non-renewal of Plaintiff's term was subject to the process detailed in section 380.1229. And under that statute, Plaintiff's contract would be "renewed for an additional 1-year period" if any of the following conditions were *not* met: (1) written notice of nonrenewal of the contract is given at least sixty days before the termination date of the contract; (2) the school district board must provide a meeting for the employee to discuss the reasons for the possible nonrenewal of employment; or (3) a court finds that the reason for nonrenewal is arbitrary or capricious. § 380.1229(2)–(3). Here, there is no dispute that the District failed to provide Plaintiff with timely written notice and an opportunity to meet with a majority of members of the District board. *See* ECF 38-3, PgID 716 (Defendant Ahmed

12

deposition); ECF 38-5, PgID 774–75 (Defendant Imbrunone deposition). Thus, under sections 380.1229(2) and 380.1229(3), Plaintiff's contract should have been "renewed for an additional 1-year period."

Defendants argued that section 380.1229 did not apply to Plaintiff's probationary term because, "[a]s the Sixth Circuit has specifically held, [section] 380.1229 does not protect probationary employees like Plaintiff." ECF 41, PgID 975 (citing *Everson v. Bd. of Educ. of Sch. Dist. of the City of Highland Park*, 123 F. App'x 221 (6th Cir. 2005)). But the argument is based on a misapplication of *Everson* and a misreading of the contract.

In *Everson*, the Sixth Circuit explained that "there is no basis for holding that [section] 380.1229 imposed any requirements on the Board with regard to the hiring of [the plaintiff] and the termination of her employment" because "[section] 380.1229 does not specifically reference the rights of probationary employees." 123 F. App'x at 227. But the plaintiff in that case "was hired on a probationary basis pursuant to both the collective bargaining agreement covering administrators and the standard contract that is part of the collective bargaining agreement, which provides that new administrators hired on a probationary basis may be terminated *without notice and without just cause*." *Id.* at 226 (emphasis added). And the collective bargaining agreement there neither mentioned nor tied the terms of employment to section 380.1229.

In striking contrast, the collective bargaining agreement that governed Plaintiff's employment expressly yoked Plaintiff's non-renewal procedures to

section 380.1229. ECF 39-3, PgID 900 ("A person newly hired in the bargaining unit shall be employed under a contract of one school year duration. This contract is subject to non-renewal pursuant to MCL 380.1229."). And the language of the contract surrounding the citation to section 380.1229 mirrored the language of the statute. *Compare id.* ("If the contract is not non-renewed, it shall extend for one additional school year. A person newly hired into the bargaining unit may be employed under an Initial Term contract for no longer than three years."), *with* § 380.1229 ("The term of the employment contract shall be fixed by the board, not to exceed 3 years. . . . If written notice of nonrenewal of the contract . . . is not given at least 60 days before the termination date of the contract, the contract is renewed for an additional 1-year period."). Because the collective bargaining agreement explicitly connected Plaintiff's non-renewal procedures to section 380.1229, *Everson*'s holding is inapplicable.

In sum, the collective bargaining agreement that governed Plaintiff's "Initial Term" employment provided for employment non-renewal procedures "pursuant to MCL 380.1229." ECF 39-3, PgID 900. Under section 380.1229, Defendants needed to provide Plaintiff with notice and an opportunity to discuss her potential removal with a majority of the board before the District could opt to not renew her contract. Because Defendants failed to follow their own procedures before removing Plaintiff from her administrator position, Plaintiff suffered a deprivation of due process.

Plaintiff must next show that the due process "deprivation occurred without adequate procedural protections." *Schulkers*, 955 F.3d at 545 (citations omitted). To

14

do so, Plaintiff must establish one of the following: (a) "the State did not have a remedy"; (b) "the State had a remedy but it was deemed inadequate; or" (c) "the State had an adequate remedy in form, both procedurally and in damages, but the State did not apply it or misapplied its remedy." *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999) (alterations and citation omitted).

No party argued that the District lacked pre- or post-deprivation procedures. *See* ECF 38, PgID 603 n.3; ECF 42, PgID 1000–01; ECF 39, PgID 875–76; ECF 41, PgID 977–78. Likewise, neither argued that the collective bargaining agreement procedures—and in turn, the procedures set forth in section 380.1229—were so inadequate that even if Defendants had followed the procedures Plaintiff would have experienced a "deprivation [that] occurred without adequate procedural protections." *Schulkers*, 955 F.3d at 545 (citations omitted); *see* ECF 38, PgID 603 n.3; ECF 42, PgID 1000–01; ECF 39, PgID 875–76; ECF 41, PgID 977–78. Instead, the parties disputed whether the State properly applied the deprivation procedures. ECF 39, PgID 875–76; ECF 41, PgID 977–78.

As explained above, the District agreed to a clear set of pre-deprivation procedures under the collective bargaining agreement. ECF 39-3, PgID 900. The procedures provided "an adequate remedy in form," *Hahn*, 190 F.3d at 716, because, if applied, the procedures would have protected Plaintiff's right to notice and a hearing before she was deprived of her property interest. Thus, the District's failure to follow the procedures violated due process.

Because the Court has found a constitutional violation, Plaintiff is entitled to summary judgment on her due process claim unless the District is shielded from liability under *Monell v. Department of Social Services of the City of New York*, and Defendant Ahmed[4] is protected by the doctrine of qualified immunity.

> a.    Monell *liability*

"A plaintiff raising a municipal liability claim under § 1983 must demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978)). A municipality agency, like a school district, "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694.

A plaintiff can show an illegal policy or custom by alleging one of the following: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess*, 735 F.3d at 478 (citation omitted). A "policy or custom" may be established by a single act by a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action ordered." *Cady v. Arenac Cty.*, 574 F.3d 334, 345 (6th Cir. 2009) (quoting

---

[4] Although the complaint names all three Defendants in the first claim, "Deprivation of the Plaintiff's Federal Civil Rights," ECF 1, PgID 28, Plaintiff appears to have narrowed liability for the due process claim to only Defendants Ahmed and the District. *See* ECF 39, PgID 876–80.

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). "The question of who possesses such final authority is one of [S]tate law." *Wuopio v. Brandon Bd. of Educ.*, No. 08-11371, 2009 WL 2872718, at * 7 (E.D. Mich. Sept. 2, 2009) (citing *Pembaur*, 475 U.S. at 483).

Under Michigan law, the school board is the final decision maker for employment decisions of superintendents, assistant superintendents, principals, assistant principals, and other administrators. Mich. Comp. Laws 380.1229(2). Under the superintendent employment contract between Defendant Ahmed and the District, Defendant Ahmed was vested with the authority to "organize, reorganize[,] or arrange the departments within the School District, including the assignments/reassignments of administrative and supervisory staff which, in her judgment, best serves the School District." ECF 39-11, PgID 951. Defendant Ahmed could not, however, "contravene the policies or directives of the Board of Education." *Id.* Put simply, Defendant Ahmed had *discretion* to act under her employment contract, but the contract did not empower her with *final policymaking authority*. Indeed, "[d]iscretion to act is not to be confused with policymaking authority; no municipal liability results where an official merely has discretion to act because subjecting a municipality to liability in such a situation would be 'indistinguishable' from respondeat superior liability." *Feliciano v. City of Cleveland*, 988 F.2d 649, 656 (6th Cir. 1993) (italics removed) (citing *City of St. Louis v. Praprotnik,* 485 U.S. 112, 126 (1988)). Thus, the mere fact that Defendant Ahmed was vested with hiring and

firing authority and used that authority to remove Plaintiff from her position does not suggest that Defendant Ahmed was a final policymaker for the District.

To be sure, Defendant Ahmed stated that she was responsible for the decision to remove Plaintiff from her administrator position. ECF 39-10, PgID 947–48; *see also* ECF 38-5, PgID 772, 793. Yet Defendant Ahmed's employment contract noted that she could not "contravene the policies or directives of the Board of Education." ECF 39-11, PgID 951. Thus, by failing to afford Plaintiff the process set forth in the contract governing the employment of Plaintiff, Defendant Ahmed directly "contravene[d] the policies or directives of the Board of Education." *Id.* And Plaintiff therefore cannot show that the District is liable under *Monell*. Summary judgment is accordingly granted in favor of Defendants (and partial summary judgment of the same by Plaintiff is denied) on the due process claim as to the District.

### b.   *Qualified immunity*

"The qualified-immunity doctrine shields government officials performing discretionary functions from civil liability unless their conduct violates clearly established rights." *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 680 (6th Cir. 2013) (citation omitted). "Thus, a defendant is entitled to qualified immunity on summary judgment unless the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Id.* (footnote and quotation omitted). "Once a defendant invokes qualified immunity, the plaintiff bears

the burden to show that qualified immunity is inappropriate." *Quigley*, 707 F.3d at 681 (citation omitted).

Because the Court has found a constitutional violation, it need only address whether the right was clearly established at the time of Plaintiff's August 2020 removal. ECF 1, PgID 22; *see Quigley*, 707 F.3d at 680 (quotation omitted).

The Michigan Supreme Court has held that "nonrenewal" under section 380.132—the predecessor to section 380.1229—is either a "termination or reassignment from an administrative position." *Sanders v. Delton Kellogg Schs.*, 453 Mich. 483, 486 (1996); *see Haut v. Standish-Sterling Cmty. Sch. Dist.*, No. 264244, 2006 WL 740102, at *2 (Mich. Ct. App. Mar. 23, 2006) (applying the *Sanders* "nonrenewal" definition to section 380.1229). Moreover, United States "Supreme Court precedent ha[s] clearly established that a pre-termination hearing is required before terminating an employee who holds a property interest in [his or] her employment, and [has] also clearly established that statutes restricting the terms and procedures under which an employee may be terminated create such a property interest." *Silberstein v. City of Dayton*, 440 F.3d 306, 316 (6th Cir. 2006) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985)). Moreover, the plain language of Plaintiff's employment contract showed that Defendants had to follow procedures that were precisely defined under section 380.1229 before removing Plaintiff from her administrator position. *See* ECF 42-3, PgID 1042. The contract therefore established "'a legitimate claim of entitlement' to continued employment" as an administrator. *Savage v. City of Pontiac*, 743 F. Supp. 2d 678, 690 (E.D. Mich.

19

2010) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). Put together, "[a]ny reasonable officer would know that termination from that job without some measure of process was unreasonable." *Id*. Defendant Ahmed is accordingly not entitled to qualified immunity as to the due process claim.

Because qualified immunity does not shield Defendant Ahmed from liability, Plaintiff is entitled to summary judgment on her due process claim as a matter of law as to Defendant Ahmed only. Plaintiff's motion for summary judgment is thus denied as to the District, but it is granted as to Defendant Ahmed. And Defendants' summary judgment motion on the due process claim against Defendant Ahmed is denied.

     B.     *FMLA Claim*

The Court will next dismiss Plaintiff's FMLA claim because she failed to show that her termination related to the leave she took before her removal from her administrator position. Under 29 U.S.C. § 2614(a)(1)(A), "any eligible employee who takes leave . . . shall be entitled, on return from such leave[,] . . . to be restored by the employer to the position of employment held by the employee when the leave commenced." If an employer denies an employee reinstatement in accordance with § 2614(a)(1), the employee may raise an interference claim. *Snyder v. U.S. Bank Nat'l Ass'n*, No. 22-3385, 2022 WL 17330172, at *3 (6th Cir. 2022) ("Because [the plaintiff] is generally entitled to reinstatement from FMLA leave, 29 U.S.C. § 2614(a)(1)(A), he has established a prima facie case of FMLA interference.").

The Court must "appl[y] the *McDonnell Douglas[]* burden-shifting framework to both FMLA interference and retaliation claims." *Snyder*, 2022 WL 17330172, at *2

(citing *Donald v. Sybra, Inc.*, 667 F.3d 757, 762–63 (6th Cir. 2012) and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973)). "Under that framework, the plaintiff first has the burden to show a 'prima facie case of [interference].'" *Id.* (quoting *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001)).

To present a prima facie case of interference, the plaintiff must show that "(1) she was an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) she was entitled to leave under the FMLA, (4) she gave the employer notice of her intention to take leave, and (5) the employer denied the employee FMLA benefits to which she was entitled." *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006) (citation omitted). And "employees seeking relief under the interference theory must establish that the employer's violation *caused them harm*." *Id.* at 508 (cleaned up).

Plaintiff cannot show a prima facie case of discrimination because the evidence fails to establish causation. *See id.* Plaintiff contended that "[a]fter learning of Plaintiff's exercise of rights under the FMLA . . . Defendants took adverse employment actions against her." ECF 1, PgID 32. But Plaintiff never alleged that Defendants terminated her *because* of the FMLA leave she took. *See id.* at 31–32. Plaintiff has essentially asked the Court to infer, based on temporal proximity, that Defendants interfered with her right to reinstatement under the FMLA. "But such temporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual." *Skrjanc*, 272 F.3d at 317 (citations omitted).

What is more, Plaintiff did not seriously try to argue that Defendants terminated her because of her FMLA leave. Rather, she relied on the arguments raised in her response to the First Amendment claim to show that the "purported legitimate reasons for taking the adverse actions against the Plaintiff had no basis in fact or did not motivate the action taken." ECF 42, PgID 1019–20 (citing section III.D, "Defendants Retaliated Against [t]he Plaintiff [f]or Her Exercise [o]f Her [Fir]st Amendment Rights."). As explained above, the evidence shows that her termination was based on her speech relating to the District's response to COVID-19. *See* ECF 38-3, PgID 724–26, 728, 730–31, 744–46, 753; ECF 38-5, PgID 774–76, 789. Plaintiff thus failed to show a genuine issue of material fact about whether the purported FMLA violation by Defendants "caused the harm" to Plaintiff. *Edgar*, 443 F.3d at 508 (citation omitted); *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (The non-moving party may not simply rest on the pleadings but must present "specific facts showing that there is a genuine issue for trial."). The Court will therefore grant summary judgment to Defendants on the FMLA claim.

C.    *State Claims*

Plaintiff raised three State claims against Defendants: breach of contract; violation of the Whistleblowers' Protection Act; and violation of the Bullard-Plawecki Employee Right to Know Act. ECF 1, PgID 34–41. The Court will address each claim next.

### 1. Breach of contract claim

For the same reasons stated in the Court's due process analysis, Plaintiff had a contractual right to a renewal of her administrator employment contract. *See* ECF 39-3, PgID 900; Mich. Comp. Laws 380.1229. Defendants failed to seek non-renewal pursuant to the procedures set forth under section 380.1229, which was required by the employment contract. *See* ECF 39-3, PgID 900. Thus, Defendants breached the employment contract with Plaintiff.[5] Plaintiff is therefore entitled to summary judgment on the breach of contract claim, and Defendants' motion for summary judgment of the same is denied.

### 2. Violation of the Whistleblowers' Protection Act

The Court will deny summary judgment to Defendants on the Whistleblowers' Protection Act claim because Defendants failed to point to specific portions of the record that they "believe[] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see* Fed. R. Civ. P. 56(a). In two conclusory sentences, Defendants stated that "Plaintiff was not transferred because she made a MIOSHA complaint—even five of them. She was transferred because of the toxic environment she created through her bad behavior." ECF 38, PgID 608–09. And rather than pointing to evidence in the record to show an absence of a genuine issue of material fact, Defendants relied on an out-of-circuit district court opinion to suggest that Plaintiff is an example of a "'squeaky wheel[]' and 'pain[] in the ass' [that is] not protected under Michigan's Whistleblower Act." *Id.* at 610.

---

[5] The Court will address damages in Footnote 10, below.

First, the Court will note the breathtaking level of unprofessionalism demonstrated by counsel for Defendants—in a federal court summary judgment brief—by referring to Plaintiff as a "pain[] in the ass." *Id.* Below the Court will detail its intolerance of both low-level practices of name-calling as well as lack of decorum from either side in future briefings.

Second, Defendants' two-sentence, conclusory assertion that Plaintiff failed to show causation is simply not enough to justify a grant of summary judgment. Indeed, "the [C]ourt is not obligated to make [D]efendants' case for them or to 'wade through and search the entire record' for some specific facts that might support their motion." *Uduko v. Cozzens*, 975 F. Supp. 2d 750, 786 (E.D. Mich. 2013) (quoting *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989)). Defendants offered no analysis for why they must prevail at the summary judgment stage. *See* ECF 38, PgID 608–10. They did not, for instance, detail the requirements to establish a claim under the whistleblower statute or point to undisputed evidence in the record that would suggest that Plaintiff's claim must fail as a matter of law. In the end, "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the [C]ourt to put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (cleaned up). Summary judgment on the Whistleblowers' Protection Act claim is denied.

### 3.     Violation of the Bullard-Plawecki Employee Right to Know Act

Plaintiff claimed that "Defendants willfully and knowingly violated" their "duty *not* to knowingly place false information in [] Plaintiff's personnel record" and their "duty to remove or correct false information in [] Plaintiff's personnel record" under the Bullard-Plawecki Employee Right to Know Act (BPERKA). ECF 1, PgID 40. Under BPERKA, if an employer "knowingly places in the personnel record information which is false, then the . . . employee . . . shall have remedy through legal action to have that information expunged." *Furby v. White*, 7 F. App'x 306, 316 (6th Cir. 2001) (emphasis omitted) (citing Mich. Comp. Laws 423.505). In the case of a violation, an aggrieved employee "may seek compliance with BPERKA." *Id.* at 316–17 (citing § 423.511).

Plaintiff failed to explain which information in her personnel record is false and presented no evidence that Defendants "knowingly place[d] in the personnel record information which is false." *Id.* at 316 (citing § 423.505). In the complaint, Plaintiff generally claimed that "Defendants willfully and knowingly violated said duties and [] [BP]ERKA." ECF 1, PgID 40. And in her response brief, Plaintiff vaguely stated that "Defendants refused to remove [] false information" from her personnel record. ECF 42, PgID 1019. Then, rather than presenting "specific facts showing that there is a genuine issue for trial," *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (emphasis omitted) (quoting Fed. R. Civ. P. 56(e)), Plaintiff summarily noted that "Defendants have presented no evidence that can conclusively rebut [the violation claim, so] a question of fact precludes summary judgment in Defendants' favor." ECF

42, PgID 1019. Yet based on the evidence before the Court, there is simply no genuine issue of material fact that the information placed in Plaintiff's personnel file was false, or that Defendants knowingly added false information to her record.

For one, the evidence suggests that the information in Plaintiff's personnel file was not false. Plaintiff explained in her deposition that she believed the "knowingly false information [] in [her] personnel file" was the "written reprimands" by Defendant Ahmed. ECF 38-2, PgID 662. "The reprimands stat[ed] that [she] didn't understand or comprehend" the requirements and protocols that the District had to follow in response to COVID-19. *Id.* The depositions of Plaintiff and Defendant Ahmed reveal that Plaintiff's complaints were based on a misunderstanding of the COVID-19 directives that the District had to follow.

For another, missing from the record is any evidence showing that Defendants knowingly placed information in Plaintiff's personnel record that was false. Considering the Court's finding that the reprimands were not based on false information, it follows that Defendants did not knowingly place false information in the personnel file of Plaintiff by filing the written reprimands. In the end, Plaintiff may have disagreed with Defendants' conclusion that she "didn't understand or comprehend," ECF 38-2, PgID 662, but a mere disagreement does not support a finding that Defendants knowingly placed *false* information in her personnel record. And if the "evidence does not show that false information was knowingly placed in [her] file," then Plaintiff "is not entitled to the remedy of expungement." *Kendall v.*

*Integrated Interiors, Inc.*, No. 283494, 2009 WL 3321515, at *8 (Mich. Ct. App. Oct. 15, 2009).

All told, Plaintiff failed to point to a genuine issue of material fact as to whether Defendants are liable under BPERKA. The Court will therefore grant summary judgment to Defendants and dismiss the claim.

III.   <u>Plaintiff's Motion for Sanctions for Spoliation</u>

Plaintiff moved for sanctions under Rule 37(e) based on spoliation of electronically stored information. ECF 47. Six weeks later, well after the response deadline,[6] Defendants filed a responding brief. ECF 48. Because the response was untimely, the Court will order the Clerk of the Court to strike the filing. And because the response brief will be stricken, the Court also order the Clerk of the Court to strike the reply brief by Plaintiff, ECF 49.

To analyze the sanctions motion, the Court will first provide the background that gave rise to the alleged spoliation. Then, the Court will discuss the relevant law. After, the Court will explain why it must order sanctions against Defendant Ahmed under Rule 37(e)(1).

A.   *Background*

The motion for sanctions centers on electronically stored information on Defendant Ahmed's mobile work phone. Plaintiff filed the present case in September 2020. ECF 1; ECF 47, PgID 1251. The same month, Plaintiff served Defendants

---

[6] Under Local Rule 7.1(e)(1), Defendants needed to file a response to the motion for sanctions "within 14 days after service of the motion."

Ahmed and the District with the summons and a document called, "Notice of Litigation and Demand for Preservation of Electronically Stored Information and Other Evidence." ECF 47, PgID 1251; ECF 47-8, PgID 1346 (Preservation Demand). In the Preservation Demand, Plaintiff included mobile-phone communications within the definition of electronically stored information. ECF 47-8, PgID 1347. The Preservation Demand also explained that the parties were "directed to immediately initiate a litigation hold for potentially relevant [electronically stored information]," and to "[g]uard [a]gainst [d]eletion." *Id.* at 1349.

In May 2021 Plaintiff served Defendants with a request to produce Defendant Ahmed's mobile phone so that Plaintiff's expert[7] could obtain electronically stored information from it. ECF 47, PgID 1252; ECF 47-11, 1364–66. Because of a discovery dispute, Defendants did not allow Plaintiff's expert to obtain electronically stored information from Defendant Ahmed's mobile phone. ECF 47, PgID 1252; 47-9, PgID 1357.

In October 2021 Defendants moved for a protective order to quash seven Freedom of Information Act (FOIA) requests made by Plaintiff's husband and for an order to forbid the disclosure of documents in response to his FOIA requests. ECF 27, PgID 504. Defendants claimed that the FOIA requests sought electronically stored information contained on the computers and mobile phones of Defendants Ahmed and Imbrunone. *Id.* at 503 (citation omitted). Defendants also claimed that the

---

[7] The technology expert for Plaintiff was also her husband, David Adamczyk. *See* ECF 47-11, PgID 1364; ECF 27, PgID 495.

"information relat[ed] to th[e] present action." *Id.* at 502 (citation omitted). According to Defendants, the FOIA requests represented an attempt by "Plaintiff to circumvent the discovery process by enlisting her [] ESI-Expert husband to serve FOIA Requests on Defendants." *Id.* at 503. The Court ultimately denied as moot the motion for a protective order because special master Michael Latiff helped the parties resolve the motion without Court intervention. ECF 34, PgID 576; ECF 47, PgID 1253. With help from the special master, the parties agreed in January 2022 that Defendants would produce "any text message[s] that exist on the individual Defendants['] phones regarding the decision to reassign or transfer [Plaintiff]," and "any text messages regarding MIOSHA claims related to this lawsuit that the individual Defendants may have—to the extent any exist." ECF 47-13, PgID 1386–87.

Defendants eventually produced documents based on that agreement, but the production included no text messages from Defendants Ahmed or Imbrunone. ECF 47-7, PgID 1344. Yet during Defendant Ahmed's April 2022 deposition, she confirmed that she had sent text messages as necessary for District business. ECF 47-16, PgID 1397–98. Indeed, during COVID-19, District administrators used text messaging and mobile phones to communicate about day-to-day operations. ECF 47-6, PgID 1340–41. Defendant Ahmed also stated that she had turned in the mobile phone to the District in early 2022.[8] ECF 47-16, PgID 1397–98.

---

[8] Before 2022, Defendant Ahmed left her administrator position and was placed on medical leave. ECF 38-3, PgID 709, 711. After her medical leave ended, the District placed her on paid administrative leave. *Id.*

29

In July 2022 Plaintiff deposed Marc Wilkinson, the director of technology for the District. ECF 47-15, PgID 1391. Wilkinson testified that when Defendant Ahmed turned in her phone to the District there was "no information on it," "like[] factory reset, like when you first get a phone." *Id.* at 1393–94; *see also id.* at 1394 ("I heard [a technology staff member] speaking with Ms. Ahmed's husband, saying, 'Why . . . are these all factory reset? You're supposed to turn these in as is,' and he was very stern with the man."). Put another way, the mobile phone had been "wiped clean prior to [the technology department] receiving it." *Id.* at 1394.

B.   *Legal Standard*

Rule 37(e) concerns the failure to preserve electronically stored information:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>> (1) upon finding prejudice to another party form the loss of the information, may order measures no greater than necessary to cure the prejudice; or
>> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>>> (A) presume that the lost information was unfavorable to the party;
>>> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>>> (C) dismiss the action or enter a default judgment.

Rule 37(e) therefore requires a three-part showing: (1) electronically stored information that should have been preserved "in the anticipation or conduct of litigation" was lost; (2) the party who had a duty to preserve the information "failed

to take reasonable steps to preserve" it; and (3) the information "cannot be restored or replaced through additional discovery." *Prudential Def. Sols., Inc. v. Graham*, No. 20-11785, 2021 WL 4810498, at *5 (E.D. Mich. Oct. 15, 2021) (Cleland, J.) (citation omitted).

If the Court finds that the three-part showing is satisfied, then the Court must determine whether the party who lost the information "acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). If the Court finds the intent to deprive, then it may order sanctions based on Rule 37(e)(2)(A)–(C). "The most severe spoliation sanctions, such as an adverse inference instruction or entering default judgment, are appropriate only where there is a finding of intent; '[a] showing of negligence or even gross negligence will not do the trick.'" *Graham*, 2021 WL 4810498, at *5 (citations omitted). If the Court finds no such intent, and if the Court finds that another party is prejudiced by the loss, then the Court "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). The Court has "broad discretion in crafting spoliation sanctions under Rule 37(e)(1)." *Graham*, 2021 WL 4810498, at *5 (quoting *Beaven v. U.S. Dep't of Just.*, 622 F.3d 540, 553 (6th Cir. 2010)).

C. *Discussion*

Sanctions against Defendant Ahmed under Rule 37(e)(1) are appropriate for spoliation of electronically stored information. To start, Plaintiff has shown that the three threshold elements of Rule 37(e) are satisfied. *See Graham*, 2021 WL 4810498, at *5 (citation omitted). First, the electronically stored information on the mobile

31

phone of Defendant Ahmed should have been preserved based on either (a) the Preservation Demand, (b) the May 2021 request to produce, or (c) the January 2022 agreement relayed by the special master that resolved the motion for a protective order. Yet at some point before or in early 2022, Defendant Ahmed's mobile phone was inexplicably "wiped clean." ECF 47-15, PgID 1394. Thus, the first prong is easily satisfied.

Second, because the mobile phone was a work phone owned by the District and used by Defendant Ahmed, it is not immediately clear who owed the duty to preserve information on the mobile phone: Defendant Ahmed or the District. Still, the phone had been "wiped clean" before the technology department of the District received the phone. ECF 47-15, PgID 1394. And the technology department was surprised, and even angered, when Defendant Ahmed returned a "factory reset" phone rather than "turn[ing it] in as is." *Id.* It therefore appears that Defendant Ahmed is the party who "failed to take reasonable steps to preserve" the information on the phone. *Graham*, 2021 WL 4810498, at *5 (citation omitted). The second prong is thus satisfied.

Third, because the information from the mobile phone had been "wiped clean," no evidence suggests that the information lost could "be restored or replaced through additional discovery." *Id.* And even if there were a marginal chance that the information could be recovered, reopening discovery at this late stage of the litigation would be inequitable to Plaintiff. Indeed, Plaintiff was not informed that the mobile phone had been wiped clean until the deposition of Wilkinson in July 2022, which

took place a month after the close of discovery. ECF 47, PgID 1265–66. The third prong is therefore satisfied.

Because the three-part showing is satisfied, the Court finds that there was a "failure to preserve electronically stored information." Fed. R. Civ. P. 37(e) (alterations omitted). The Court must next determine whether sanctions under Rule 37(e)(1) or (e)(2) are appropriate here. To do so, the Court must consider whether the party who lost the information, Defendant Ahmed, "acted with the intent to deprive [Plaintiff] of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2).

As explained above, Defendant Ahmed appears to have caused the information on the phone to be lost. And the question that follows is whether Defendant Ahmed intentionally deprived Plaintiff of the information on her phone. *See* Fed. R. Civ. P. 37(e)(2). At bottom, the Court will find that there is insufficient evidence to conclude that Defendant Ahmed intended to deprive Plaintiff of the electronically stored information on her mobile phone.

Defendant Ahmed received a request to preserve electronically stored information in September 2020. ECF 47-8, PgID 1346. And she returned a factory-reset mobile phone to the District in early 2022. ECF 47-15, PgID 1394. Taken together, those facts could circumstantially show that Defendant Ahmed intended to destroy electronically stored information related to the present litigation. But with the substantial time gap between the events,[9] that evidence alone fails to show "the

---

[9] The Court will also note the important intervening circumstances of Defendant Ahmed's medical leave and subsequent paid administrative leave from work for the District, which cut against a finding of intent. ECF 38-3, PgID 709, 711.

intention necessary for an adverse inference instruction." *Annabel v. Frost*, No. 14-10244, 2023 WL 20045577, at *4 (E.D. Mich. Feb. 15, 2023) (citing Fed. R. Civ. P. 37(e)(2)).

What is more, Plaintiff's argument that Defendants agreed to produce certain electronically stored information after it knew that Defendant Ahmed had returned a factory-reset phone fails to show intentional deprivation. *See* ECF 47, PgID 1269. After all, the parties agreed to produce the electronically stored information on January 11, 2022, ECF 47-13, PgID 1386, and Defendant Ahmed returned the phone sometime in "January or February" of "2022." ECF 47-16, PgID 1397. The timeline thus lacks clarity as to whether the production agreement occurred before or after the mobile phone was wiped clean and returned to the District. And even if Defendant Ahmed returned the phone before January 11, 2022, it is unclear whether the District knew that the phone had been wiped clean at the time it entered into the production agreement. Thus, the evidence cannot show intentional deprivation on the part of either Defendant Ahmed or the District under Rule 37(e)(2). The Court will thus decline to enter sanctions under Rule 37(e)(2)(A)–(C).

But the Court will nevertheless enter sanctions under Rule 37(e)(1). Although there is insufficient evidence to show intentional deprivation, there is sufficient reason to conclude that Plaintiff was prejudiced by the loss of electronically stored information on Defendant Ahmed's mobile phone. Defendant Ahmed confirmed that she had sent text messages as necessary for District business. ECF 14-16, PgID 1397–98. And during COVID-19, District administrators used text messaging and mobile

phones to communicate about day-to-day operations. ECF 47-6, PgID 1340–41. It follows that there might have been information relevant to the present litigation stored on the phone. And because the phone was wiped clean, the information cannot be recovered. Thus, the loss caused by Defendant Ahmed is unsalvageable and prejudicial to Plaintiff.

Because Defendant Ahmed failed to preserve electronically stored information and the failure prejudiced Plaintiff, the Court will order the following sanction against Defendant Ahmed: Plaintiff may present evidence to the jury about the missing electronically stored information from the mobile phone. Upon such presentation, the Court will instruct the jury that it may draw whatever inferences it considers appropriate from those facts against Defendant Ahmed only.

D.    *Fee Shifting*

Last, Plaintiff requested, in a single sentence, that the Court award to her "costs and attorney fees so wrongfully incurred in having to bring" the present motion. ECF 47, PgID 1241. But Plaintiff offered no authority to suggest that the Court must award costs and attorney fees if it grants a motion for sanctions under Rule 37(e)(1), unlike the requirement set forth in Rule 37(a)(5). *See* ECF 47, PgID 1241; Fed. R. Civ. P. 37(a)(5) ("If the motion is granted . . . the court must, after giving an opportunity to be heard, require . . . [payment of] the movant's reasonable expenses incurred in making the motion, including attorney's fees."). Indeed, courts within the Sixth Circuit generally award costs and attorney fees under Rule 37(e)(1) only upon a finding that an award of costs "'ameliorates the economic prejudice

imposed on the defendants and is no harsher than necessary to cure that prejudice." *Schnatter v. 247 Grp., LLC*, No. 3:20-CV-00003, 2022 WL 2402658, at *19 (W.D. Ky. Mar. 14, 2022) (quotation and citation omitted); *see Faulkner v. Aero Fulfillment Servs.*, No. 1:19-cv-268, 2020 WL 3048177, at *7 (W.D. Mich. June 8, 2020) (explaining that a sanction ordering the payment of attorney's fees and costs under Rule 37(e) is a "discretionary" sanction). And Rule 37(e)(1) allows the Court to "order measures no greater than necessary to cure the prejudice." The Court thus finds that the above-described jury instruction sanction is sufficient to "cure the prejudice" caused by the loss of electronically stored information. The Court will therefore decline to award attorney fees and costs to Plaintiff.

## CONCLUSION

The Court will grant in part and deny in part the summary judgment motion by Defendants. The following claims are therefore dismissed with prejudice: First Amendment claim against all Defendants (claim one); Due Process claim against Defendant the District (claim one); FMLA claim (claim two); and the BPERKA claim (claim five). The Court will also grant summary judgment to Plaintiff on the following claims: Due Process claim against Defendant Ahmed (claim one); and breach of contract claim (claim four).[10] Thus, the sole claim that remains is the Whistleblowers' Protection Act claim (claim three).

---

[10] This Opinion and Order does not resolve the issue of damages. Because a trial is needed to resolve factual issues and the question of damages, the Court will schedule a jury trial for June 27, 2023 at 9:00 a.m. The final pretrial conference is set for June 14, 2023 at 11:00 a.m. The conference and trial will take place in Courtroom 216.

Additionally, the Court will grant Plaintiff's motion for sanctions based on spoliation of electronically stored information under Rule 37(e)(1). Plaintiff may present evidence to the jury about the missing electronically stored information from the mobile phone. Upon such presentation, the Court will instruct the jury that it may draw whatever inferences it considers appropriate from those facts against Defendant Ahmed only.

Next, because discovery has closed and the Court has resolved the cross-summary judgment motions, and given the ongoing delay in all jury trials in the Eastern District of Michigan because of COVID-19, *see* 20-AO-059, the Court will refer the case to mediation with Mr. Michael Latiff.[11] The Court expects that mediation with Mr. Latiff will help resolve the case, including the issue of damages, especially considering the parties' past success in resolving discovery issues with help from Mr. Latiff as a special master. The mediation must occur no later than May 31, 2023.

This order does not dispose of the entire case. Thus, the Court is required to admonish both parties for highly unprofessional practices and to instruct them to proceed with utmost professionalism and decorum henceforth. Defendants' grossly improper references to Plaintiff as "a stage five Covid hysteric . . . as well as a mask Nazi and a typical 'Karen,'" ECF 38, PgID 591, and as a "pain[] in the ass," *id.* at 610, evidence a low level of legal practice and should be sanctioned. Plaintiff's comments,

---

[11] As the parties are aware by their previous work with Mr. Latiff as the special master in the case, Mr. Latiff can be reached by phone at (248) 220-1351 or by email at mlatiff@mcdonaldhopkins.com.

though perhaps less explosive and insensitive, likewise smack of significant disrespect of the Court's processes and a complete lack of professionalism. *See, e.g.*, ECF 42, PgID 997 ("Defendants' absurdly inaccurate and vitriolic portrayal of the Plaintiff does not reflect reality. Rather, it reflects the twisted, retaliatory mindset of a tyrannical twosome who could not and would not tolerate any statement made by anyone that may have suggested that they were anything but amazing."). She should be disciplined as well. But although the Court could indeed levy sanctions on both parties for the name-calling and unprofessionalism, it will instead stay its hand. The Court simply warns the parties it will not tolerate further foolish or shocking conduct by the parties—or their lawyers. Future briefing by the parties must adhere to the level of civility and professionalism expected of lawyers in the federal courts and of this one in particular. Further failures will result in the imposition of harsh monetary sanctions.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendants' motion for summary judgment [38] is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that Plaintiff's motion for partial summary judgment [39] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's motion for sanctions for spoliation [47] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court must **STRIKE** Defendants' response brief opposing the motion for sanctions [48] as untimely.

**IT IS FURTHER ORDERED** that the Clerk of the Court must **STRIKE** Plaintiff's reply brief [49].

**IT IS FURTHER ORDERED** that a jury trial is **SET** for **June 27, 2023 at 9:00 a.m. in Courtroom 216**. The final pretrial conference is **SET** for **June 14, 2023 at 11:00 a.m. in Courtroom 216**.

**IT IS FURTHER ORDERED** that the Court **REFERS** the case to Mr. Michael Latiff for mediation and settlement discussions and **ORDERS** the parties to proceed in compliance with Local Rule 16.4. The mediation and settlement discussions must occur **no later than May 31, 2023**. The parties must contact Mr. Latiff and provide him with a copy of this order as soon as practicable and must **NOTIFY** the Court of the date of the mediation session once it is scheduled.

**IT IS FURTHER ORDERED** that Mr. Latiff must **NOTIFY** the Court within seven days of completion of the mediation, "stating only the date of completion, who participated, whether settlement was reached, and whether further [alternative dispute resolution] proceedings are contemplated." E.D. Mich. L.R. 16.4(e)(6). If a settlement is reached, the parties must **NOTIFY** the Court immediately upon completion of the mediation and must **SUBMIT** a proposed order of dismissal within 21 days. *Id*. at 16.4(e)(7). If a settlement is not reached, the parties must **NOTIFY** the Court within five days of the completion of the mediation.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: March 31, 2023

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 31, 2023, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager